**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MOEN INCORPORATED, A DELAWARE CORPORATION, | |
| Plaintiff, | Case No. 1:25-cv-00095-BMB |
| v. | |
| INSINKERATOR LLC, A DELAWARE LIMITED LIABILITY COMPANY, | JUDGE BRIDGET MEEHAN BRENNAN |
| Defendant. | |
| INSINKERATOR LLC, A DELAWARE LIMITED LIABILITY COMPANY, | |
| Counter-Claimant, | |
| v. | |
| MOEN INCORPORATED, A DELAWARE CORPORATION, | |
| Counter-Defendant. | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant InSinkErator LLC's ("InSinkErator's) Motion to Dismiss Plaintiff's Complaint remains well-taken. Moen's state-law claims are insufficiently pled, and the Complaint alleges no facts that would allow this Court to determine if Ohio common law and the Ohio Deceptive Trade Practices Act ("ODTPA") even apply in this case. Even if Moen had cleared the pleading bar, Moen's state-law claims cannot be salvaged, whether now or through amendment. Moen's Complaint and Opposition fail to demonstrate that "any facts relevant to [its state-law claims] will have any bearing on [its federal] claim." *Lefeve v. Kim's Day Spa, LLC*, No. CV 17-12689, 2018 WL 836449, at *2 (E.D. Mich. Feb. 13, 2018). This Court does not have supplemental jurisdiction

1

over Moen's state-law claims, and they should be dismissed outright. With respect to the declaratory claim, Moen's Opposition all but ignores the status and sequence of the Parties' exchange of testing information pursuant to a joint agreement: At the time that Moen filed this action, InSinkErator had provided its own testing information and was awaiting testing information from Moen's end. Any apprehension of litigation at that time was neither real nor reasonable.

## I.      There is No Supplemental Jurisdiction Over Moen's State-Law Claims

The supplemental jurisdiction inquiry centers on whether the asserted federal and state-law claims derive from a "common nucleus of operative fact." Opp. at 11 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). They do not.

In arguing that its state-law claims arise from "similarly accusatory conduct" as its federal claim, Opp. at 12, Moen improperly reframes the substantive conduct at issue. The conduct underlying the declaratory claim is *Moen's* horsepower claims (i.e., claims that Moen makes to customers and retailers about its disposals' horsepower to market and promote those disposals). The conduct underlying the state-law claims is alleged misstatements made by *InSinkErator* representatives at a single trade show about Moen's provision of private-label disposals to a particular reseller. The conduct at issue for the federal and state claims respectively is thus far from the "similarly accusatory conduct" Moen contends. The mere fact that the state and federal claims involve the same garbage disposal manufacturer parties—Moen and InSinkErator—is insufficient to establish the "common nucleus of operative fact" required for supplemental jurisdiction.

Moen also makes a newfound argument—not based in the language of its Complaint—that there was a "campaign to paint Moen as an untrustworthy operator." Opp. at 12. The Complaint alleges no such campaign, let alone a coordinated campaign. *See generally* Compl. (Dkt. 1). Moen does not allege, for example, that the InSinkErator representatives who allegedly made comments to Moen resellers at the November 2024 trade show coordinated in any way with those who

2

conducted the testing or sent the demand letter related to Moen's horsepower claims. *See id.* Nor does the Complaint allege that InSinkErator engaged in communications *with Moen's customers or partners* about Moen's horsepower claims or their veracity. *See id.*

Contrary to Moen's contention, there is simply no basis for thinking that "discovery for the different claims will overlap significantly." Opp. at 12. Moen's state-law and federal-law claims travel on different tracks: They involve different topics with different witnesses and require different proof. While "[t]he declaratory judgment claim arises from [InSinkErator]'s accusations that Moen's horsepower advertising is false," Opp. at 12, discovery will not focus on *the fact* that InSinkErator sent a demand letter to Moen. It will focus on what *Moen* represented about the horsepower of its garbage disposals, the testing substantiating those horsepower claims, the bases for that testing, and whether Moen's claims are likely to deceive consumers.

Information and testing data in InSinkErator's possession related to Moen's horsepower claims will be relevant to Moen's federal claim. Opp. at 12. But there is no reason to believe that evidence regarding horsepower claim substantiation and technical testing procedures will overlap with evidence concerning the trade show statements, which concern whether Moen was providing products for an individual reseller. Compl. ¶ 28. The federal claim can be resolved without reference to the state-law claims and vice versa. *See Vogel v. Ne. Ohio Media Grp. LLC*, 2017 WL 3157920, at *2 (N.D. Ohio July 25, 2017) (declining to exercise supplemental jurisdiction where there were "no operative facts in common between Plaintiff's two sets of claims").

The cases that Moen cites in claiming discovery will overlap are readily distinguishable. In *Bates v. American Credit Acceptance, LLC*, the "common denominator" between the federal and state-law claims was a particular interest installment contract and calls related to that contract. *Bates v. Am. Credit Acceptance*, LLC, No. 16-12239, 2016 WL 5477429, at *3 (E.D. Mich. Sept.

3

29, 2016). The court reasoned that neither the federal nor state claim "would exist but for the November 2011 contract and the parties' actions thereunder." *Id.* Discovery for both claims would therefore focus on "records, documentation, and/or testimony regarding the nature of the phone calls and the frequency with which they were made; the consent and revocation of consent to call by the Bates; and the purchase of the vehicle and the amount of the loan [under the contract]." *Id.*

The federal and state claims in *Consolidated Industries, LLC v. Maupin* similarly revolved around a central fact pattern. They were based on the misappropriation of trade secrets by a portable building manufacturers' former employees and the same employees' tortious conduct related to their departures from the company. *Consol. Indus., LLC v. Maupin*, No. 122CV01230STAJAY, 2023 WL 7312493, at *5 (W.D. Tenn. Nov. 6, 2023). There are no practices, contracts, events, or individuals linking the federal and state-law claims here. Moen's assertion that they arise out of the "timeframe," Opp. at 12, is beside the point: Unrelated events or practices can occur during the same time frame without deriving from common operative facts.

Moen's argument for supplemental jurisdiction boils down to an assertion that its federal declaratory claim and state-law claims arise out of Moen's sales of garbage disposals to its customers, which is the kind of expansive jurisdictional claim that courts have rejected. In *Bruce v. Sana Health, Inc.*, for example, the court refused to exercise supplemental jurisdiction over a counterclaim alleging conversion under Michigan law in a Fair Labor Standards Act action arising out of an employer's failure to pay overtime compensation. Defendants argued that their counterclaim arose out of a common nucleus of operative fact because both the counterclaim and plaintiff's claim for unpaid overtime wages arose out of plaintiff's employment. *Bruce v. Sana Health, Inc.*, 504 F. Supp. 3d 653, 657–58 (E.D. Mich. 2020). The court rejected that argument, reasoning that "none of the evidence that would be needed to prove the state law conversion

4

counterclaim would be necessary to prove or defend the FLSA claim." *Id*. at 658 (cleaned up). Such is the case here.

## II.      Moen's State-Law Claims are Insufficiently Pled

Moen fails to identify with required particularity the speaker and audience for its slander claim. Moen alleges that unidentified "InSinkErator representatives" told "various" unidentified Moen resellers at a November 2024 Chicago trade show that Moen was providing private-label disposals for a large reseller and that "Moen is lying to you if they tell you otherwise." Compl. ¶¶ 27-29. Contrary to Moen's arguments, Opp. at 13, those allegations are not enough to render its slander claim plausible under Rule 8 and Rule 12(b)(6). *See Shock v. St. Rita's Med. Ctr.*, 2012 WL 5354571, at *5 (N.D. Ohio Oct. 29, 2012) (granting motion for partial judgment on the pleadings where plaintiff failed to "specifically identify" who made the alleged defamatory statement); *Smith v. Bd. Of Trs. Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 903 (N.D. Ohio 2010) (dismissing defamation count where "there [were] no allegations regarding to whom the alleged defamatory statement was made").

Nor has Moen properly pled special damages as required. Mot. at 9-10. Moen's Opposition does not claim that the statement that Moen was providing private-label disposals for a large reseller is on its face defamatory. Nor could it. *See Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 916 N.E.2d 484, 487, 183 Ohio App.3d 104, 109 (Ohio App. 9 Dist., 2009) (recognizing that defamation *per se* exists only when a statement is defamatory on its face). The assertion that Moen is supplying to a particular company is not the kind of statement that reflects upon Moen in a way that "injure[s] [it] in [its] trade or profession." *Id.*

Rather, Moen argues that the accusation that "Moen is 'lying' to its customers and partners" is defamatory *per se*. Opp. at 14. But the Complaint does not allege that InSinkErator representatives made any such statement. Rather, the Complaint alleges that they made the

following conditional statement: "Moen is lying to you if they tell you otherwise." Compl. ¶ 29. This is far from the direct statement at issue *in Wagner v. Circle W. Mastiffs*, where the amended complaint alleged that the defendant "misrepresented" the dog breed. *Wagner v. Circle W. Mastiffs*, 732 F. Supp. 2d 792, 805 (S.D. Ohio 2010). It is also distinct from the statements in *Croce v. New York Times Company*, which asserted that a cancer researcher "falsified data to support the promise of his work." *Croce v. New York Times Co.*, 345 F. Supp. 3d 961, 975 (S.D. Ohio 2018), *aff'd*, 930 F.3d 787 (6th Cir. 2019). At most, the alleged statement that "Moen is lying to you if they tell you otherwise" is a hypothetical statement that does not on its face fit Ohio's narrow *per se* categories. *See Northeast Ohio Elite Gymnastics Training Ctr.*, 916 N.E.2d at 487 (requiring that a *per se* statement be defamatory on its face, not through innuendo); *Scott v. News-Herald*, 25 Ohio St.3d 243, 254, 496 N.E.2d 699, 709 (1986) (newspaper's assertion that school superintendent had lied at a hearing while under oath was constitutionally protected opinion); *Vail v. The Plain Dealer Publ'g Co.*, 72 Ohio St. 3d 279, 283, 649 N.E.2d 182, 186 (1995) (referring to someone as a liar is constitutionally protected opinion).

Because the alleged statements are not defamatory *per se*, Moen was required to, and failed to, plead special damages. Moen pleads only perception-based, illusory injuries and self-incurred harm: the "potential for lost resellers and as well as resources and expenses incurred in efforts to remedy ISE's false statements and their effects." *See* Opp. at 14 n.6 (quoting Compl. ¶ 41). These alleged damages do not suffice. *See McGee v. Simon & Schuster, Inc.*, 154 F.Supp.2d 1308, 1315 (S.D. Ohio, 2001) (damages "are not pled sufficiently where the plaintiff's allegations do not show any loss or injury actually suffered as a direct consequence of an impaired reputation") (cleaned up); *Elec. Furnace Corp. v. Deering Milliken Rsch. Corp.*, 383 F.2d 352, 356–57 (6th Cir. 1967) (rejecting as insufficient to show special damages allegations that plaintiff "was apprehensive that

6

… lest, as a result of the statement concerning him, some third persons might alter their relations with him to his disadvantage" and refusing to recognize self-incurred expenditures to "deny and refute" an allegedly defamatory statement as special damages). Moen fails to allege that any reseller actually ceased or reduced purchases because of the purportedly defamatory statement. Instead, at most, Moen asserts the vague "potential" for harm and its own mitigation efforts, both of which courts have rejected qualify as special damages.

Nor has Moen plausibly alleged a violation under the ODTPA. The ODTPA claim is based only on a "formulaic recitation" of the relevant statute. Mot. at 10. The cases cited in Moen's Opposition do not support its position that *those* allegations are sufficient. *Reynolds & Reynolds Co. v. Superior Integrated Solutions, Inc.* concerned a motion for leave to amend. *Reynolds & Reynolds Co. v. Superior Integrated Sols.*, Inc., No. 1:12-CV-848, 2014 WL 12666752 (S.D. Ohio Feb. 7, 2014). In *International Technologies Consultants, Inc. v. Stewart*, the court was considering a subject matter jurisdiction challenge to the state-law claims, and held that those claims survived only after finding that *a federal claim* was adequately pled. 554 F. Supp. 2d 750, 753, 761 (E.D. Mich. 2008). Neither case is relevant here.

## III.   Moen Has Not Pled a Sufficient Connection Between Ohio and its State-Law Claims

Moen improperly recasts InSinkErator's argument regarding the applicability of Ohio law to Moen's claims as an argument that the state-law claims "should be dismissed because the statements at the trade show was *[sic]* made in Chicago." Opp. at 16. What InSinkErator argues is that Moen has not properly pled facts to provide this Court with any basis to determine if the ODTPA or Ohio common law applies to Moen's state-law claims. Mot. at 2, 10-11.

Tort claims are generally governed by the law of the place of injury, unless another state has a more significant relationship to the lawsuit. *See Walker v. Nationwide Mut. Ins. Co.*, 2015 WL 9393878, at *5 (Ohio Ct. App. Dec. 22, 2015). That presumption can be overcome if a party

7

can "demonstrate that another state has a more significant relationship to the action." *Id.* Moen—not InSinkErator—had the burden to plead facts demonstrating such a relationship, and failed to do so.

The Opposition points to the following jurisdictional and venue allegations in an attempt to tether Moen's state-law claims to Ohio: that Moen is headquartered in Ohio, Compl. ¶ 2; that InSinkErator "caused harm to Moen in this District," *id.* ¶ 5; and that InSinkErator "does business" with Ohio customers and sells a "substantial amount" of its products in Ohio, *id.* ¶ 5. Moen also cites the following allegations concerning the alleged false statements:

- That during meetings at a Chicago tradeshow in November 2024, InSinkErator falsely told various Moen resellers that Moen was producing private label garbage disposals for Reseller A, causing a "misunderstanding," Compl. ¶¶ 27, 28, 43, 44;

- That those statements "created the perception that Moen is providing preferential treatment to Reseller A … and damaged Moen's reputation by implying that Moen is being dishonest with its customers…" *id.* ¶ 30; and

- That the alleged misstatements "harmed Moen in the marketplace, as [the perception created by those statements] is likely to cause other resellers to seek private label deals" from Moen's competitors like InSinkErator, *id.* ¶ 31, and "damaged Moen," *id.* ¶ 45.

None of the above allegations establishes a particular relationship to Ohio, let alone one to overcome the presumption that Illinois law applies. In *Walker*, upon which Moen relies, the court declined to find that the plaintiff's wrongful termination claims in the amended complaint accrued in Ohio where there was no allegation "above and beyond the fact that Nationwide is headquartered in Ohio." *Walker*, 2015 WL 9393878 at *4. Although the court reversed the lower court's dismissal of the second amended complaint, it did so after outlining extensive allegations from that complaint, including those that the employee had reported insurance fraud to corporate headquarters in Ohio; that the terminated employee had numerous conversations related to the reported fraud with staff in Ohio prior to his termination, and that relevant employment decisions

8

affecting the terminated employee came from the Ohio headquarters. *Id.* at *5-6. These kinds of allegations are absent from Moen's Complaint. The Complaint does not identify an Ohio audience, Ohio transactions, or an Ohio-specific injury traceable to the alleged statement. That *InSinkErator* sells a substantial amount of its products in Ohio, Compl. ¶ 5, does not link Moen's claims to Ohio. Nor does the generalized allegation that InSinkErator "caused harm" to Moen in Ohio. *Id.* ¶ 5. Nor does the allegation that Moen was harmed "in the marketplace" move the needle. *Id.* ¶ 31.

## IV.    Dismissal of Moen's Declaratory Claim is Warranted

Moen's contention that standing and ripeness requirements are satisfied ignores the status of the Parties' negotiations at the time it filed suit.[1] InSinkErator's December 2024 demand letter asserted that Moen had falsely inflated the advertised horsepower for certain products. Compl. ¶¶ 17, 18. The Parties subsequently executed a Non-Disclosure and Confidentiality Agreement to facilitate the exchange of testing data and information regarding their respective testing methodologies. Decl. of Michael Friedman in Supp. of Def.'s Mot. ("Friedman Decl.") (Dkt. 11-2) ¶ 3. InSinkErator provided to Moen testing data consistent with that agreement on January 9, 2025, and explained that it looked forward to "reviewing Moen's information and explanation as soon as possible." *Id.* ¶ 4. That communication indicated that "if Moen [did] not satisfactorily explain its position and assuage [InSinkErator's] concerns," InSinkErator would be forced to take legal action. Decl. of Thomas Holt in Supp. of Pl.'s Opp. ("Holt Decl.") (Dkt. 13-1) ¶ 5.

Moen could not have reasonably believed *at that time* that InSinkErator would file suit imminently. The Parties had jointly executed an agreement to facilitate a meaningful discussion

---

[1] InSinkErator filed an answer to the Complaint as well as counterclaims, subject to InSinkErator's Motion to Dismiss, on November 13, 2025. Dkt. 14. InSinkErator included compulsory counterclaims as required by Federal Rule of Civil Procedure 13(a) and did not waive its standing and ripeness arguments in doing so.

9

about their testing processes and InSinkErator was, at the time that Moen filed this action, awaiting "Moen's information and explanation." *Id*. ¶ 4. The parties were therefore far from the "point of no return," *ACH Food Companies, Inc. v. Wiscon Corp.*, No. 04-2589 M1/V, 2005 WL 2114056, at *6 (W.D. Tenn. Aug. 30, 2005) (cleaned up), that would render the need for declaratory relief direct and real.

The facts here are also unlike those in *Ampro Industries, Inc. v. Dr. Farrah Gray Publishing, LLC*, upon which Moen relies. Opp. at 6, 8, 9. In that case, the defendant threatened to sue for copyright infringement unless the plaintiff "paid $1.5 million for past unauthorized use or $2.5 million for past and future use of the book cover." *Ampro Indus., Inc. v. Dr. Farrah Gray Pub., LLC*, No. 12-2696, 2013 WL 5426257, at *1 (W.D. Tenn. Sept. 26, 2013). Here, the parties were actively exchanging test information, and InSinkErator was awaiting "Moen's information and explanation" concerning its own testing procedures. Holt Decl. ¶ 4.[2,3]

**V.    Conclusion**

For the reasons discussed above and in InSinkErator's opening brief, the Court should dismiss the Complaint in its entirety.

---

[2] The declaratory claim should also be dismissed because the allegation that Moen's horsepower statements are not literally false nor misleading is a legal conclusion supported only by a skeletal factual allegation concerning unspecified testing. Compl. ¶ 24. Moen asks this Court to find that its Complaint satisfies federal pleading standards because InSinkErator should be aware of information exchanged during the Parties' correspondence. Opp. at 10. But, "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011).

[3] Moen's request for a declaration that its horsepower claims "cannot support a legal claim for false advertising *or any other related claim*," Compl. at 8 (emphasis added), is overbroad. Mot. at 6. InSinkErator does not contend at this stage that Moen's overbroad prayer for relief is an independent basis for dismissal, but reserves all rights to argue that the relief Moen seeks is beyond the scope of what this Court can provide under the Declaratory Judgment Act. 28 U.S.C. § 2201.

Dated: November 26, 2025          Respectfully submitted,

*/s/ Michael Gervais*
Kalpana Srinivasan (*pro hac vice*)
Michael Gervais (*pro hac vice*)
Anna (Coll) Gorn (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com
mgervais@susmangodfrey.com
agorn@susmangodfrey.com

Joseph Grinstein (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002-5096
Tel: (713) 651-9366
Fax: (713) 654-6666
jgrinstein@susmangodfrey.com

John R. Mitchell (0066759)
Taft, Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, OH  44114
Phone: (216) 41-2838
Fax: (216) 241-3707
jmitchell@taftlaw.com

*Attorneys for Defendant InSinkErator LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 26 day of November 2025.

*/s/ Michael Gervais*