UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


MOEN INCORPORATED,                    )        CASE NO.:  1:25-cv-00095
                                      )
    Plaintiff/Counter-Defendant,      )        JUDGE BRIDGET MEEHAN BRENNAN
                                      )
v.                                    )
                                      )
INSINKERATOR LLC,                     )        **MEMORANDUM OPINION**
                                      )        **AND ORDER**
    Defendant/Counter-Claimant.       )


Defendant InSinkErator LLC ("InSinkErator") moves to dismiss the complaint in its

entirety for lack of subject matter jurisdiction, failure to state a claim, and the absence of

authority to assert supplemental jurisdiction over asserted state-law claims.  (Doc. 11.)  Plaintiff

Moen Incorporated ("Moen") opposed (Doc. 13), and InSinkErator replied (Doc. 17).  For the

reasons stated herein, Defendant InSinkErator LLC's Motion to Dismiss is GRANTED in part

and DENIED in part.

I.    **BACKGROUND**

    A.    **Factual Background**

Moen and InSinkErator are competitors in the residential and commercial plumbing

market.  (Doc. 1 at 3-4, ¶¶ 7, 15.)[1]  Both companies manufacture and sell garbage disposals.  (*Id.*

at ¶¶ 8, 16.)  Moen offers various models of garbage disposals differing in size, features, and

grinding power.  (*Id.* at 3, ¶ 10.)  For instance, Moen manufactures garbage disposals with

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

motors that produce 1/3 horsepower, 1/2 horsepower, 3/4 horsepower, and 1 horsepower

(hereinafter, horsepower is "HP").  (*Id.* at ¶ 11.)  Moen uses a garbage disposal's HP rating in its

marketing and advertising.  (*Id.* at ¶ 12.)

This dispute involves two models of garbage disposals produced by Moen: the EX 75c

and EX 100c.  (*Id.* at 4, ¶ 18.)  Moen markets these garbage disposals as 3/4 HP and 1 HP,

respectively.  (*Id.*)  On December 16, 2024, InSinkErator sent a letter to Moen regarding

InSinkErator's internal testing of Moen's garbage disposals.  (*Id.* at ¶¶ 17, 18; Doc. 11-2 at 77,

¶ 2.)  InSinkErator's internal testing allegedly showed Moen's 3/4 HP and 1 HP models did not

achieve their claimed HP.  (*Id.*)  Moen maintains there are several ways to measure HP and

Moen's testing substantiates the marketing claims about its 3/4 and 1 HP models.  (Doc. 1 at 3,

¶¶ 13-14.)  InSinkErator's communications alleged Moen falsely advertised in violation of

federal law and threatened legal action if Moen did not substantiate its HP claims.  (*Id.* at 4,

¶¶ 19-22.)  In early 2025, the parties executed a non-disclosure agreement to engage in

meaningful discussions and share testing data and information regarding testing methodologies

and results.  (Doc. 11-2 at 77, ¶ 3.)

Manufacturers like Moen and InSinkErator often market their products at tradeshows

where the parties compete for business, namely that of resellers.  On November 14, 2024, at the

American Supply Association tradeshow in Chicago, Moen believes an InSinkErator

representative communicated to Moen resellers that Moen was providing private label garbage

disposals for a large reseller.  (Doc. 1 at 5, ¶¶ 27-28.)  That InSinkErator representative told

Moen customers "Moen is lying to you if they tell you otherwise."  (*Id.* at ¶ 29.)  To Moen, this

created a perception that Moen is providing preferential treatment for that reseller.  (*Id.* at ¶¶ 30-

31.)  As a result, Moen believes other resellers will seek private label deals from competitors, like InSinkErator, to the exclusion of Moen.  (*Id.* at ¶ 31.)

### B.    Procedural History

On January 17, 2025, Moen filed its complaint.  (Doc. 1.)  The complaint alleges three claims: (1) under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Moen seeks a declaration it has not falsely advertised its products in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) slander under Ohio law; and (3) violations of the Ohio Deceptive Trade Practices Act ("ODTPA"), R.C. § 4165.02.  (*Id.* at 6-7, ¶¶ 32-46.)  Moen seeks a declaration the EX 75c and EX 100c garbage disposal claims are neither false nor misleading and that its HP advertising cannot support a legal claim for false advertising.  (*Id.* at 8, Prayer for Relief.)  Moen seeks a permanent injunction to the same effect.  (*Id.*)  Lastly, Moen seeks damages relating to its slander and ODTPA claims.  (*Id.*)  On October 11, 2025, InSinkErator moved to dismiss the complaint.[2]  (Doc. 11.)  The motion is fully briefed.  (Docs. 13, 17.)

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(1): Declaratory Judgment Act Claim (Count One)

#### 1.    Legal Standard

Rule 12(b)(1) challenges subject-matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).  "The U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (citing U.S. CONST. art. III, § 2).  "Article III's case-or-controversy requirement allows federal courts to

---

[2] On November 26, 2025, InSinkErator answered the complaint and asserted counterclaims. (Doc. 14.)  The counterclaims allege four causes of action: (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of the ODTPA; (3) intentional interference with prospective economic advantage; and (4) negligent interference with prospective economic advantage.  (*Id.* at 131-38, ¶¶ 58-111.)  On December 11, 2025, Moen answered InSinkErator's Counterclaims.  (Doc. 19.)

resolve concrete disputes, but prohibits them from passing 'judgments on theoretical disputes that may or may not materialize.'" *Id.* (quoting *Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)).  There are several justiciability doctrines which place limits on a federal court's jurisdiction, among them standing and ripeness.  *Id.*  "To have standing, a plaintiff must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress."  *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).  A plaintiff "must show an imminent or actual injury before [entering] the federal courts."  *STAT Emergency*, 946 F.3d at 954.  They "cannot sue simply to avoid a '*possible* future injury.'"  *Id.* at 954-55 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013)).

As to ripeness, "a claim is not ripe if it turns on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Safety Specialty*, 53 F.4th at 1020 (quoting *Trump v. New York*, 592 U.S. 125, 131, 141 S. Ct. 530, 208 L. Ed. 2d 365 (2020)).  To determine whether a claim is ripe, a court weighs several factors, including: (1) whether the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.  *Dealer Comput. Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008).

Important here, the "Declaratory Judgment Act 'does not alter these rules or otherwise enable federal courts to deliver an expression of opinion about the validity of laws.'"  *Safety Specialty*, 53 F.4th at 1020 (quoting *STAT Emergency*, 946 F.3d at 954).  Instead, "[t]he Act

offers only an 'alternative remedy—a declaratory judgment—for *existing* cases or controversies.'" *Id.* at 1021 (quoting *STAT Emergency*, 946 F.3d at 954).  When a plaintiff seeks declaratory relief, they must still "satisfy the prerequisites of the Declaratory Judgment Act and Article III's standing baseline." *STAT Emergency*, 946 F.3d at 954.

To establish standing in a declaratory judgment action, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).  "A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff[.]" *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).  "The concepts of 'adverse legal rights' and 'legal risk,' used in these cases to describe the standard for jurisdiction require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006).  "Article III jurisdiction may be met where [a party] takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013) (quotations and citation omitted).

### 2.    Discussion

InSinkErator argues Moen lacks standing to assert its Declaratory Judgment Act claim. (Doc. 11-1 at 67.)  It therefore moves to dismiss Count One under Rule 12(b)(1).  (*Id.*)  First,

InSinkErator argues Moen initiated this lawsuit on the mere speculative fear of litigation.  (*Id.* at 68.)  To InSinkErator, Moen has not suffered a concrete injury sufficient to confer Moen with standing.  (*Id.*)  Second, InSinkErator argues Moen's suit is not ripe.  (*Id.*)  InSinkErator argues Moen's claimed harm of the threat of legal action is not a *present* dispute.  (*Id.* at 68-69.)  Thus, any threats of litigation are not sufficient to establish a concrete injury.  (*Id.* at 69.)

Moen asserts it has standing to sue, and the Declaratory Judgment Act claim is ripe. (Doc. 13 at 96-97.)  It contends InSinkErator's legal threats created a sufficient reasonable apprehension of litigation.  (*Id.*)  Moen cites InSinkErator's letters and communications accusing Moen of false advertising pertaining to its HP claims and demanding corrective action.[3]  (*Id.* at 98.)  If not, InSinkErator told Moen it would "be forced to take legal action without delay to protect itself, consumers, and retailers."  (*Id.* at 98.)  Moen also argues InSinkErator's ripeness arguments fall flat because a "threat of legal action" is sufficient for a "present or significantly likely controversy," and therefore its claim is ripe.  (*Id.* at 99-100.)

The threat of legal action for ongoing and future conduct sufficiently satisfies the "actual controversy" requirement under Article III and the Declaratory Judgment Act.  *MedImmune*, 549 U.S. at 130-32.  Here, InSinkErator, through its demand letters, threatened to bring false advertising claims under the Lanham Act.  For instance, InSinkErator stated, in unequivocal terms, that Moen's garbage disposals "do not actually achieve the claimed horsepower."  (Doc. 13-1 at 112, ¶ 4.)  InSinkErator did not suggest that the false advertising claims might violate federal law; instead, InSinkErator stated "Moen's false HP claims violate various federal and state law, regulations, and standards."  (*Id.*)  InSinkErator described Moen's conduct as

---

[3] A Rule 12(b)(1) motion challenging the factual existence of subject-matter jurisdiction is a factual attack.  *See Roberts v. Progressive Preferred Ins. Co.*, 167 F.4th 955, 960 (6th Cir. 2026). On a factual attack the Court does not presume the plaintiff's factual allegations are true and weighs evidence to confirm it has jurisdiction.  *Id.* (citations omitted).

"unlawful" and then referenced legal action InSinkErator initiated against another manufacturer of garbage disposals.  (*Id.*)  InSinkErator also told Moen that, if Moen did not substantiate its advertising claims, InSinkErator "will be forced to take legal action without delay" for "harms *now* being caused by Moen's false claims."  (*Id.* at 113, ¶ 5 (emphasis added).)

InSinkErator says the threats were not unequivocal.  But nonetheless, InSinkErator maintained, and still maintains, it is presently suffering an injury from Moen's alleged false advertising.  For its part, Moen also claims injury by alleging InSinkErator's accusations will harm its standing in the marketplace.  Indeed, InSinkErator has confronted Moen with alleged scientific testing which shows Moen's products do not operate as advertised.  For Article III standing, this is a sufficient dispute.  Afterall, "'[t]he central purpose of the Declaratory Judgment Act . . . is to provide the opportunity to clarify rights and legal relationships without waiting for an adversary to file suit.'"  *Severe Records, LLC v. Rich*, 658 F.3d 571, 580 (6th Cir. 2011) (quoting *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353, 354 (9th Cir. 1988)).

In this case, there is a "substantial controversy" between Moen and InSinkErator.  The parties have "adverse legal interests" and their dispute is of "sufficient immediacy" since both parties claim present harm.  *See MedImmune*, 549 U.S. at 127.  This is sufficient for Article III standing.  *See Sussman v. Soleil Mgmt.*, No. 18-cv-2218, 2020 WL 870222, 2020 U.S. Dist. LEXIS 30432, at *10 (D. Nev. Feb. 21, 2020) (finding standing for Declaratory Judgment Act claim for Lanham Act false advertising where defendant threatened legal action unless plaintiff ceased false advertising).  InSinkErator's request to dismiss Count One pursuant to Rule 12(b)(1) is denied.

**B.      Rule 12(b)(6): Declaratory Judgment Act Claim (Count One)**

**1.      Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A Rule 12(b)(6) motion tests whether the complaint meets this standard.  To survive a Rule 12(b)(6) motion, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When courts evaluate whether a complaint makes out a plausible claim, they must accept all factual allegations as true.  *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).  Courts must also draw all reasonable inferences in favor of the plaintiff, and they must generally construe the complaint in the light most favorable to the plaintiff.  *Id.*  But courts do not accept legal conclusions or other conclusory allegations as true.  *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)).  And courts need not make unwarranted factual inferences.  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

**2.      Discussion**

Moen asks this Court to declare that it does not falsely advertise HP on the specified garbage disposals in violation of the Lanham Act, 15 U.S.C. § 1125.  (Doc. 1 at 6, ¶¶ 32-36.)  Section 1125(a) of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  Thus, there are "two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014).  Relevant here, the elements for false advertising are: "(1) the defendant made a false or misleading statement of fact about the plaintiff's product or service, (2) the statement actually deceived or tended to deceive a substantial portion of the message's intended audience, (3) the statement likely influenced the intended audience's purchasing decisions, (4) the defendant introduced the statement in interstate commerce, and (5) a causal connection between the defendant's statement and the plaintiff's injury."  *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452-53 (6th Cir. 2024) (citing *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 411 (6th Cir. 2024)).

InSinkErator argues Moen's Declaratory Judgment Act claim must be dismissed under Rule 12(b)(6).  (Doc. 11-1 at 70.)  It urges the underlying issue, Moen's alleged false advertising, is insufficiently pleaded because Moen merely alleged legal conclusions unsupported by factual allegations.  (*Id.*)  Essentially, InSinkErator argues Moen simply alleges it does not falsely

advertise.  (*Id.* at 71.)  Moen argues its complaint easily satisfies Rule 8 pleading requirements.  (Doc. 13 at 101.)  It directs the Court to the alleged products at issue, statements about false advertising, and its contrary position to InSinkErator.  (*Id.* at 101-02.)

Having reviewed the entirety of the allegations, and having drawn all reasonable inferences from those allegations, the complaint allegations sufficiently state a claim for declaratory judgment.  Moen identified the products at issue.  (*See* Doc. 1 at 3-4, ¶¶ 11, 18.)  Moen alleged InSinkErator believes the HP claims associated with these products are false.  (*See id.* at 4, 6, ¶¶ 17-20, 33.)  Because the statements associated with the products, to Moen, are not false, they do not deceive the marketplace nor improperly induce consumers' purchasing decisions.  (*See id.* at 3-6, ¶¶ 13-14, 24-26, 33-34.)  Moen need not, at this stage, put forth all the evidence supporting these allegations so long as they are plausible.  *See Iqbal*, 556 U.S. at 678.  In short, InSinkErator has fair notice of Moen's claim.  InSinkErator's motion to dismiss Count One pursuant to Rule 12(b)(6) is denied.[4]

> **C.**      **Supplemental Jurisdiction Over State-Law Claims (Counts Two and Three)**
>
> > **1.      Legal Standard**

If a federal court has original jurisdiction over a claim, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  To form part of the same case or controversy, "[t]he state and federal claims must derive from a common nucleus of operative fact."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).  A "common

---

[4] InSinkErator argues if the Court dismisses the Declaratory Judgment Act claim, then it should dismiss Moen's state-law claims under 28 U.S.C. § 1367(c).  (Doc. 11-1 at 71.)  Because the Declaratory Judgment Act claim is not dismissed, the Court need not address this argument.

nucleus of operative fact" is most often found where "the factual connection between the state and federal claims . . . involve the same incident." *Kubala v. Smith*, 984 F.3d 1132, 1137-38 (6th Cir. 2021) (citing *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997)). For instance, claims derive from a common nucleus of operative fact where the "state and federal law claims arise from the same contract, dispute, or transaction." *Packard v. Famers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 583 (6th Cir. 2011) (collecting cases).

### 2.    Discussion

The complaint asserts two state-law claims: slander and a violation of the ODTPA. (Doc. 1 at 6-7, ¶¶ 37-46.) Moen asserts the Court has supplemental jurisdiction over these claims under § 1367(a), which authorizes federal courts to resolve attendant state law claims related to the claim over which the federal court has original jurisdiction. (*Id.* at 2, ¶ 4.) InSinkErator argues the opposite. (Doc. 11-1 at 71.) To InSinkErator, Moen's state-law claims must be dismissed because they are factually divorced from Moen's request for declaratory relief relating to the false advertising issues. (*Id.*) That is, Moen's Declaratory Judgment Act claim relates to false advertising issues with Moen's garbage disposals. (*Id.* at 72.) Notably, the slander and ODTPA claims relate to a single statement at a trade show unrelated to the false advertising issues. (*Id.*) Instead, the state-law claims relate to alleged private reselling deals. (*Id.*) Moen disagrees. (Doc. 13 at 102.) It argues all claims arise from a common nucleus of operative fact because the allegations of false advertising and the representative's statements are part of a "wide-reaching campaign to paint Moen as an untrustworthy operator in the garbage disposal business." (*Id.* at 103.) While different claims, Moen argues they will involve significant overlap in discovery. (*Id.*)

The supplemental jurisdiction question hinges on whether Moen's Declaratory Judgment Act, slander, and ODTPA claims arise from a common nucleus of operative fact. They do not.

As pleaded, Moen's Declaratory Judgment Act claim pertains to InSinkErator's allegation that Moen is falsely advertising certain garbage disposals.  (*See* Doc. 1 at 4-6, ¶¶ 17-26, 32-36.)  Moen then pleads slander and ODTPA claims based on alleged statements made by a InSinkErator representative at a trade show.  (*See id.* at 5-7, ¶¶ 27-31, 37-46.)  The statements at issue there involve allegations Moen was producing private label garbage disposals for a large reseller.

The two events are simply unconnected by any common facts.  Under these circumstances, courts routinely find the state-law claims do not arise from a common nucleus of operative fact.  *See, e.g.*, *Kubala*, 984 F.3d at 1137-39 (First Amendment retaliation claim shared no common facts with state sexual harassment claim); *Vogel v. N.E. Ohio Media Grp. LLC*, No. 17-cv-272, 2017 WL 3157920, 2017 U.S. Dist. LEXIS 116044, at * 5-6 (N.D. Ohio July 25, 2017) (federal workplace claims shared no common nucleus of operative fact with state law defamation claim); *Farmer v. Whaley's Auto Repair & Towing, Inc.*, No. 22-cv-2809, 2023 WL 11830118, 2023 U.S. Dist. LEXIS 239242, at *6 (W.D. Tenn. Mar. 16, 2023) (federal FLSA claim did not share common nucleus of operative fact with state law contract and trade secret claims); *New Beginnings Ministries v. George*, No. 15-cv-2781, 2018 WL 11378829, 2018 U.S. Dist. LEXIS 245391, at *68 (S.D. Ohio Sept. 28, 2018) (declining supplemental jurisdiction over state-law claims where federal claims "arise form separate events and have separate facts than the state claim").

Moen's arguments otherwise are unpersuasive.  First, while Moen's opposition brief asserts a "campaign" to smear Moen, no such campaign is alleged in the complaint.  (*See* Doc. 1 at 4-5.)  In fact, the complaint specifically delineates the two incidents as separate issues and does not connect them at all.  (*Id.*)  If plaintiffs plead facts that prove a flaw in the claim or

substantiate a defense, they may plead themselves out of federal court.  *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").  Because Moen alleged its slander and ODTPA claims involve a distinct and separate incident at a trade show, those allegations demonstrate § 1367(a) is inapplicable.

Second, Moen's argument that discovery will overlap is strained.  The false advertising issues will involve significantly different written discovery than the slander and ODTPA claims, much like any witnesses to be deposed do not, based on the allegations presented, appear to be the same.  The slander and ODTPA claims will involve discovery regarding private label garbage disposals, the alleged falsity of that statement, witnesses to that statement, and any harm Moen has suffered as a result.  The false advertising claims separately involve issues regarding marketing, the operation/HP of the garbage disposals, and the effect on the marketplace.  Lastly, Moen argues § 1367(a) provides a "sweeping grant" of jurisdiction.  But the grant only sweeps so far.  The claims must still arise from a common nucleus of operative fact.  They do not do so here.

Moen's cited case law does not further its arguments, and conversely, reveals notable weaknesses.  For instance, Moen cites *Consol. Indus., LLC v. Maupin*, No. 22-cv-1230, 2023 WL 7312493, 2023 U.S. Dist. LEXIS 199032 (W.D. Tenn. Nov. 6, 2023).  But there, plaintiff, a manufacturing company, asserted federal trade secret claims and state-law claims against a former employee and competitor for working together to steal plaintiff's trade secrets.  All claims related to one alleged scheme to misappropriate plaintiff's trade secrets.  Not so here.

The federal and state-law claims here are separate and distinct events.  Moen also cites *Bates v. Am. Credit Acceptance, LLC*, No. 16-12239, 2016 WL 5477429, 2016 U.S. Dist. LEXIS 134261 (E.D. Mich. Sept. 29, 2016).  There, the district court found a federal TCPA claim sufficiently related to a breach of contract counterclaim because the telephone calls made by defendants to plaintiff stemmed from plaintiff's alleged breach of contract.  Thus, the claims shared a common nucleus of operative fact.  Unlike in *Bates*, where the claims both involved "the same contract, dispute, or transaction," the claims here do not share a single contract or dispute.

Instead, consider *Kubala*.  984 F.3d 1132.  There, plaintiff sued his former employers alleging sexual harassment under Ohio law and First Amendment retaliation under federal law. *Id.* at 1135.  The sexual harassment claim related to allegations that plaintiff's boss made a series of sexually suggestive comments about plaintiff's sexuality.  *Id.* at 1135-36.  The First Amendment retaliation claim related to allegations that plaintiff's boss changed plaintiff's job status to prevent him from running for political office.  *Id.* at 1136.  The Sixth Circuit held the district court lacked supplemental jurisdiction over the sexual harassment claim.  *Id.* at 1137-39. While both claims were inflicted by plaintiff's boss, there was otherwise no substantial similarity between them.  *Id.*  The facts giving rise to the claims occurred at different times, had no overlap, and were separate incidents altogether.  *Id.*  While recognizing "an interest in judicial economy," the court explained "subject-matter jurisdiction reaches beyond efficiency concerns . . . We may not, and must not, hear a case over which we have no power."  *Id.* at 1138.  So too here.  Moen's state-law claims rely on a separate set of facts than the false advertising issues.  While Moen alleges InSinkErator inflicted both sets of injuries, that is not enough.  The events giving rise to the claims involve different people, different fact patterns, and, as pleaded, are not connected to each other.

Accordingly, InSinkErator's motion to dismiss Counts Two and Three is granted.  The Court does not have supplemental jurisdiction over Moen's state-law claims and they are dismissed without prejudice.[5]

## III. CONCLUSION

For the reasons stated herein, Defendant InSinkErator LLC's Motion to Dismiss (Doc. 11) is GRANTED in part and DENIED in part.  The parties' Joint Request to Stay Proceedings (Doc. 16) is DENIED as moot.

**IT IS SO ORDERED.**

**Date:**  August 10, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

---

[5] The Court does not reach any of InSinkErator's other arguments regarding dismissal of the state-law claims for failure to state a claim.